IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

ROBERT RAKES and
ROBERT HOLLANDER, individually,
and on behalf of all others similarly
situated,

    Plaintiffs,

vs.

LIFE INVESTORS INSURANCE
COMPANY OF AMERICA,

    Defendant.

No. C06-0099

RULING ON MOTION TO COMPEL,
FOR PROTECTIVE ORDER AND
FOR SANCTIONS

## TABLE OF CONTENTS

I.   *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  *ISSUES PRESENTED.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. *DISCUSSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Request for Production of Documents.* . . . . . . . . . . . . . . . . . . . 2
    B.   *Privilege Log.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    C.   *Deposition Objections.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    D.   *Additional Depositions.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    E.   *Costs and Attorney fees.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV. *ORDER.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

On the 12th day of February 2008, this matter came on for hearing on the Motion to Compel, for Protective Order and for Sanctions (docket number 106) filed by the Plaintiffs on January 16, 2008. The Plaintiffs did not appear, but were represented by

their attorneys, Allan Kanner, Aylin R. Acikalin Maklansky, Brad J. Brady, Conlee S. Whiteley, and Timothy Q. Purdon. Defendant was represented by its attorneys, Deborah Hilarie Renner, J. Michael Weston, and Reid L. Ashinoff.

## II. ISSUES PRESENTED

Five issues are raised by the instant Motion: First, whether the Court should enter an order compelling Defendant to respond further to Requests Numbers 38-42 in Plaintiffs' Second Set of Requests for Production of Documents. Second, whether the Court should find that Defendant has waived its attorney-client privilege and work product privilege by failing to produce a timely and sufficiently detailed privilege log. Third, whether the Court should "impose a black letter ruling" regarding deposition objections. Fourth, whether Plaintiffs are entitled to depose Ross Bagshaw and Hersh Markusfeld, and re-depose Janet Soppe, or some other Rule 30(b)(6) witness. Fifth, whether Plaintiffs are entitled to costs and reasonable attorney fees associated with the instant Motion and deposition of witnesses. The Court will address each of the issues in turn.[1]

## III. DISCUSSION

### A. Request for Production of Documents

In brief, Plaintiffs allege that Defendant "intentionally under-priced" its long-term care policies, "with a hidden plan and intent to shift the risk of faulty actuarial assumptions onto policyholders through future rate increases on a nationwide basis."[2] In an effort to discover evidence which will support their claims, Plaintiffs seek information relating to

---

[1] Pursuant to Local Rule 37.c, "motions to compel must be filed within 14 days after the discovery deadline." The instant Motion to Compel was filed by Plaintiffs on January 16, 2008. At that time, the deadline for conclusion of the first phase of discovery was December 20, 2007, some 27 days earlier. By agreement of the parties and upon motion by Defendant, however, the Court entered an Order on January 30, 2008, extending the discovery deadline to January 31, 2008. Defendant does not argue that the instant Motion was not timely filed.

[2] *See* Brief in Support of Motion to Compel, for Protective Order and for Sanctions (docket number 106-3) at 9.

2

the pricing of Life Investors and Bankers United policies, together with information reflecting how Defendant's actual experience compared with its initial assumptions.[3]

On August 23, 2007, Plaintiffs served on Defendant a Second Set of Requests for Production of Documents.[4] At issue in the instant Motion are Requests Numbers 38-42, pertaining to pricing of the long-term care insurance policies. Specifically, Plaintiffs requested production of

> 38. All documents reflecting the original expected termination and/or lapse rates and expected loss ratios for each year and each policy form for the LTC insurance policies.
> 39. All documents reflecting the actual termination and/or lapse rates and actual loss ratios for each year and each policy form for the LTC insurance policies.
> 40. All documents regarding and relating to the determination of the actuarial assumptions, including lapse and/or termination rate assumptions, to set the original premium rates for the LTC insurance policies.
> 41. All documents regarding and relating to sensitivity analyses on actuarial pricing assumptions conducted prior to the launch of the LTC insurance policies, including but not limited to sensitivity analysis on lapse and/or termination rate assumptions.
> 42. All documents regarding and relating to any studies relied upon in the determination of the actuarial assumptions used to set premium rates for the LTC insurance policies, including but not limited to actual lapse and/or termination rate experience studies on other LTC insurance policies issued prior to the LTC insurance policies at issue.

---

[3] Life Investors and Bankers United were separate statutory entities when the policies were initially issued, but the long-term care policies were managed by the long-term care division of their parent company, Aegon USA. Life Investors and Bankers United merged in 2001. *See* Brief in Support of Motion to Compel, for Protective Order and for Sanctions (docket number 106-3) at 11, n.10.

[4] *See* Brief in Support of Motion to Compel, for Protective Order and for Sanctions, Exhibit 1 (docket number 106-4 at 2-10).

*See* Brief in Support of Motion to Compel, for Protective Order and for Sanctions, Exhibit 1 (docket number 106-4) at 6. Plaintiffs believe that the information should be readily available, citing an undated memo from Jan Soppe to Don Shepard, indicating that "[a]t least annually we do very detailed studies of our LTC experience which classify our results by product, year of issue and duration, age, marital status, benefit period, and elimination period."[5]

The Court was not provided with Defendant's response to Plaintiffs' Second Set of Requests for Production of Documents. In their Brief, however, Plaintiffs helpfully set forth Defendant's responses to Requests Numbers 38-42. Defendant raised numerous objections to the Requests, including claims that (1) they are overly broad and unduly burdensome, (2) they seek information relating to policies issued in states other than those in which Plaintiffs reside, (3) they go beyond the scope of discovery anticipated in phase 1, (4) they relate to policies issued by Bankers United, and (5) some of the documents are protected by the attorney-client privilege and work product privilege. Notwithstanding the objections, Defendant also responded:

> Subject to and without waiving the foregoing Specific and General Objections, Defendant has already produced the rate filings for the Named Plaintiffs' policy forms in Missouri and Virginia, and will produce documents reflecting lapse rates assumptions for the LIICA products purchased by the Named Plaintiffs, as well as documents reflecting lapse assumptions for a representative sample of policy forms in other states.

*See* Brief in Support of Motion to Compel, for Protective Order and for Sanctions (docket number 106-3) at 9.

At the time of hearing, Defendant's counsel represented that notwithstanding the objections, Defendant conducted a diligent search of its records and has produced all of the Life Investors documents which are responsive to Request Numbers 38-42. According

---

[5] *See* Brief in Support of Motion to Compel, for Protective Order and for Sanctions, Exhibit 7 (docket number 106-4 at 51).

4

to counsel, documents pertaining to the original pricing of the Bankers United policies was also produced.[6] Plaintiffs deny that they have been provided with the requested documents.

It is the Court's understanding that over 70,000 documents have been produced by Defendant. According to Defendant's counsel, Defendant has been working feverishly in a compressed discovery period to provide discovery which far exceeded the anticipated discovery for the class certification stage. While the record is imprecise, it is the Court's understanding that various documents have been produced at various times, including immediately preceding depositions. Defendant argues that Plaintiffs "don't know what they have."

Plaintiffs complain that Defendant's production of documents has not been tied to specific discovery requests and, therefore, it is unknown whether the documents described in Requests Numbers 38-42 have been provided. Defendant responds that the documents were produced in the manner that they were kept by the business, as permitted by the rules. FEDERAL RULE OF CIVIL PROCEDURE 34(b)(2)(E)(i) provides that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."[7]

It is impossible, on this record, for the Court to determine the manner in which the documents were "kept in the usual course of business." In addition, the Court does not know the manner in which they were produced. (Although it was represented at the hearing that the documents were produced in a searchable electronic format.) Defendant

---

[6] Plaintiffs assert in their Brief that Defendant objects to producing "the original actuarial memoranda" for the Bankers United policies. *See* Brief in Support of Motion to Compel, for Protective Order and for Sanctions (docket number 106-3) at 10. While Defendant continues to object to the production of certain information relating to Bankers United policies, it is the Court's understanding that Defendant is willing to produce, and has produced, documents relating to initial pricing of Bankers United policies.

[7] The FEDERAL RULES OF CIVIL PROCEDURE were restyled and renumbered effective December 1, 2007. Prior to that time, this requirement was found in Rule 34(b)(i).

concedes, however, that it made no effort to label the produced documents to correspond to the specific requests.

According to its Brief, Life Investors "has already produced and agreed to produce documents of the type requested, to the extent such documents exist."[8] In a letter to Plaintiffs' counsel dated January 3, 2008, Defendant's counsel represented that "LIICA has searched for and produced information going back to the late 1980's regarding both BULAC and LIICA, and, as you know, has produced BULAC information from that period of time to the limited extent that BULAC and LIICA pricing were interrelated."[9] A sample of the materials relating to pricing of original Bankers United and Life Investors policies was attached to the Akbar Declaration as Exhibit P.[10] In its Brief, Defendant insists that it "has produced the documents it has located and will be providing additional information it finds."[11]

Request for Production Number 38 seeks documents pertaining to "the original expected termination and/or lapse rates and expected loss ratios" for the policies at issue. The Court concludes that Plaintiffs are entitled to that information. To the extent Defendant has not already produced the requested information, it shall do so promptly. In addition, it shall identify the documents which it believes are responsive to the request. *Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001) ("producing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34."). Similarly, the Court concludes that to the extent the documents have

---

[8] *See* Defendant's Resistance to Plaintiffs' Motion to Compel, for Protective Order and for Sanctions (docket number 111-2 at 9).

[9] *See* Declaration of Joshua S. Akbar, Exhibit O (docket number 111-18 at 2-3).

[10] *See* Declaration of Joshua S. Akbar, Exhibit P (docket number 111-19).

[11] *See* Defendant's Resistance to Plaintiffs' Motion to Compel, for Protective Order and for Sanctions (docket number 111-2 at 11).

not already been produced, Defendant must produce the documents requested by Plaintiffs in Requests Numbers 39, 40, 41, and 42.

### B. *Privilege Log*

When a party claims that discoverable material is protected by privilege, it must assert the claim of privilege and describe the affected documents.

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed -- and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

FED. R. CIV. P. 26(b)(5)(A)(i) and (ii).

In this case, Defendant provided Plaintiffs with an initial Privilege Log on December 21, 2007, pertaining to "its production through December 4, 2007."[12] On January 25, 2008, Defendant provided Plaintiffs with an amended Privilege Log "for its production through January 5, 2008."[13] In its Brief, Defendant claims that it took "over 100 hours" to create the initial Privilege Log.[14] The amended Privilege Log was prepared following a "meet and confer" by counsel.

The amended Privilege Log consists of 130 pages, referring to 605 documents. Most of the entries are identified with a "Bates Stamp," indicate whether the document was withheld or redacted, show when the document was generated, identify the format in

---

[12] *See* Declaration of Jeffrey M. Movit, Exhibit B (docket number 111-27).

[13] While not identified as an exhibit, a copy of the amended Privilege Log was provided to the Court at the instant hearing.

[14] *See* Defendant's Resistance to Plaintiffs' Motion to Compel, for Protective Order and for Sanctions (docket number 111-2 at 18).

7

which the document was generated (e.g., electronic notepad entry, memo, e-mail, etc.), identify the author and recipient (if any), identify persons who were copied in on the document, describe the "subject" of the document, and assert the reason for the privilege (i.e., attorney-client and/or work product). While virtually all of the entries describe the subject of the communication and the reason for the claimed privilege, a small number of the entries claim that the documents are "irrelevant."[15]

Defendant has the initial burden of proving a factual basis establishing the applicability of the privilege. *St. Paul Reinsurance Co. v. Commercial Financial Corp.*, 197 F.R.D. 620, 627 (N.D. Iowa 2000). A party asserting a privilege meets its burden "when it produce[s] a detailed privilege log stating the basis of the claimed privilege for each document in question." *Rabushka v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997). The Court concludes that the amended Privilege Log prepared by Defendant is sufficiently detailed to meet its initial burden of proving a factual basis for the privileges claimed.

With the exception of a limited number of entries where Defendant claims a document is "irrelevant," Plaintiffs do not challenge any of the specific claims of privilege made by Defendant, but rather argue generally that Defendant waived its right to claim privilege by filing an untimely privilege log that was not sufficiently detailed. The Court concludes that this argument fails. The Court believes that the amended Privilege Log adequately describes the nature of the documents and communications, so as to "enable other parties to assess the claim." Since the discovery deadline was extended to January 31, 2008 by agreement of the parties, the Court finds that the privilege log was provided timely.[16] Furthermore, "waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith." *First Savings Bank, FSB v. First Bank System, Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995).

---

[15] *See* amended Privilege Log, p. 65, entry numbers 343-345.

[16] Defendant notes that Plaintiffs' privilege log was provided to Defendant on the same day that Defendant submitted its initial privilege log. *See* Declaration of Jeffrey M. Movit, Exhibit A (docket number 111-26).

In its Brief, Plaintiffs request that the Court "deem Defendant's claims of privilege waived and compel the production of the withheld and redacted documents."[17] For the reasons set forth above, the Court finds that Plaintiffs' request should be denied. In the alternative, Plaintiffs "request the Court to review the documents *in camera*, particularly the board minute meetings, the documents related to ERISA and IMSA issues."[18] While questions regarding whether a document is privileged are often resolved by submitting it to the Court *in camera*, "[t]his is an awkward, time-consuming process." *PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 992 (8th Cir. 1999). In this case, Plaintiffs fail to specify the documents which it believes the Court should review *in camera*. Rather, Plaintiffs suggest that the Court review all 605 documents. The Court declines.

### C. Deposition Objections

Plaintiffs complain that during depositions, "Defense counsel continually objected in an argumentative and suggestive manner."[19] Describing defense counsel as "incorrigible," Plaintiffs ask that the Court "impose a black letter ruling to stop defendants [sic] from continuing to abuse the process."[20] For its part, Defendant argues that it was Plaintiffs' counsel "who decided to engage in disruptive colloquy."[21] In a letter to Plaintiffs' counsel dated January 3, 2008, Defendant's counsel claimed that "the extensive 'speaking' objections made by plaintiffs' counsel actually prevented LIICA's counsel from

---

[17] *See* Brief in Support of Motion to Compel, for Protective Order and for Sanctions (docket number 106-3 at 20).

[18] *Id.*

[19] *See* Brief in Support of Motion to Compel, for Protective Order and for Sanctions (docket number 106-3 at 21).

[20] *Id.* at 22.

[21] *See* Defendant's Resistance to Plaintiffs' Motion to Compel, for Protective Order and for Sanctions (docket number 111-2 at 26).

9

getting answers to her questions, and was far more disruptive than any defense objections made during your deposition sessions."[22]

FEDERAL RULE OF CIVIL PROCEDURE 30(c)(2) requires that "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner." Plaintiffs contend that the objection should be limited to the words "I object to the form of the question." The Rule, however, is not so restrictive. Rather, it simply provides that the objection must be "stated concisely in a nonargumentative and nonsuggestive manner." As the Court indicated at the time of hearing, the general practice in Iowa permits an objector to state in a few words the manner in which the question is defective as to form (e.g., compound, vague as to time, misstates the record, etc.). This process alerts the questioner to the alleged defect, and affords an opportunity to cure the objection. Care must be taken by the objector, however, to not attempt to suggest an answer, or to influence or "coach" the witness. The Court has reviewed the transcripts of the depositions and finds that the objections, for the most part, comply with the Rule and general practice.

Counsel are reminded that by asking to be admitted *pro hac vice* to the Northern District of Iowa, they agreed to "comply with all provisions and requirements of the Iowa Rules of Professional Conduct."[23] Among other things, the Standards for Professional Conduct adopted in Iowa provide that "[a] lawyer's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms."[24] Lawyers pledge that "[w]e will treat all other counsel, parties and witnesses in a civil and courteous manner, not only in court, but also in all other written and oral communications."[25] The Court believes that counsel's conduct in the deposition of Janet

---

[22] *See* Declaration of Joshua S. Akbar, Exhibit O (docket number 111-18 at 2).

[23] *See* Local Rule 83.1.d.3.

[24] *See* Standards for Professional Conduct, Iowa Court Rules 33.1(1).

[25] *Id.* at 33.2(1).

Soppe fails to meet that standard. Counsel are admonished that they are required to act professionally and treat one another with courtesy and respect at all times.

Plaintiffs ask that the Court impose a "black letter ruling." One already exists. Namely, counsel are required to fully comply with the FEDERAL RULES OF CIVIL PROCEDURE, the Iowa Rules of Professional Conduct, and the Iowa Standards for Professional Conduct.

### D. *Additional Depositions*

Arguing that he should have been disclosed pursuant to FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)(A), Plaintiffs seek to take the deposition of Hersh Markusfeld. Defendant notes that the initial disclosure obligation "has been narrowed to identification of witnesses and documents that the disclosing party may use to support its claims or defenses."[26] That is, "[a] party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use."[27] Defendant asserts that it does not intend to "use" Markusfeld in its defense and, therefore, his disclosure was not required by Rule 26(a)(1)(A).

Furthermore, Defendant argues that "Plaintiffs did not ask for Mr. Markusfeld's deposition until January 4, well after the discovery cut-off and well after Plaintiffs had documents with Mr. Markusfeld's name."[28] Specifically, Defendant states that documents referencing Markusfeld were produced on November 20, 2007.[29] Plaintiffs contend, however, that Markusfeld's substantial involvement in the original pricing of the long-term care policies did not become apparent until the deposition of Janet Soppe on December 18,

---

[26] FED. R. CIV. P. 26(a)(1)(A), advisory committee's notes to 2000 amendment.

[27] *Id.*

[28] *See* Defendant's Resistance to Plaintiffs' Motion to Compel, for Protective Order and for Sanctions (docket number 111-2 at 36).

[29] *See* Declaration of Joshua S. Akbar (docket number 111-3, ¶ 15) (referring to Exhibit M (docket number 111-16)).

2007. While the discovery deadline in phase 1 was initially December 20, 2007, it was extended by agreement of the parties to January 31, 2008. Accordingly, Plaintiffs made a timely request to take Markusfeld's deposition. Since Markusfeld was a consultant, Defendant claims that it cannot produce him for a deposition. Accordingly, it will fall to Plaintiffs to secure Markusfeld's attendance at the deposition.

Plaintiffs also request an extension of the discovery deadline to depose Ross Bagshaw. Apparently, the deposition was scheduled and then cancelled. At the time of hearing, Defendant's counsel agreed to produce Bagshaw for a deposition on March 6, 2008, if the Court extended the discovery deadline.

Finally, Plaintiffs request that they be permitted to re-depose Janet Soppe or take the deposition of another Rule 30(b)(6) witness. Plaintiffs contend that Soppe was not a knowledgeable witness and responded "I don't know" to a substantial number of questions. Defendant argues that the events about which Soppe was asked occurred fifteen years ago or longer. Soppe was president of the long-term care division at Aegon during the years in question and, according to Defendant, is the most knowledgeable person regarding the requested information.

Plaintiffs took a deposition of Soppe which extended from 9:16 a.m. to 6:31 p.m. and consists of 325 pages. After carefully reviewing the deposition, the Court concludes that it is sufficient for class certification purposes. In phase 2 of the case, Plaintiffs may seek further discovery in this regard.

### E. Costs and Attorney fees

The Court finds no basis to award costs or attorney fees to either party.

### IV. ORDER

IT IS THEREFORE ORDERED as follows:

1.  To the extent not previously produced, Defendant shall promptly produce any documents in its possession which are described in Plaintiffs' Second Set of Requests for Production of Documents, Numbers 38-42, and which are not otherwise privileged.

2. Plaintiffs' request that the Court enter an order finding that Defendant has waived its right to assert an attorney-client and/or work product privilege is **DENIED**. Defendant shall produce, however, those documents which were identified as "irrelevant" on the amended Privilege Log.

3. In the conduct of depositions, or otherwise, counsel are required to fully comply with the FEDERAL RULES OF CIVIL PROCEDURE, the Iowa Rules of Professional Conduct, and the Iowa Standards for Professional Conduct.

4. Defendant shall produce Ross Bagshaw for a deposition by Plaintiffs on March 6, 2008, or on any other date mutually agreed to by the parties.

5. Plaintiffs shall be entitled to take the deposition of Hersh Markusfeld on a date mutually agreed to by the parties.

6. Plaintiffs' request to redepose Janet Soppe or some other Rule 30(b)(6) witness is **DENIED**.

7. Plaintiffs' request for costs and attorney fees is **DENIED**.

DATED this 14th day of February, 2008.

_____
JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA